UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| MEDCAPGROUP, LLC, | ) | |
|         Plaintiff, | ) | |
| vs. | ) | 2:14-cv-00674-RCJ-NJK |
| MESA PHARMACY, INC., | ) | **ORDER** |
|         Defendant. | ) | |

This case arises out of a pharmacy's assignment of consumer debt. Pending before the Court is a Motion to Dismiss (ECF No. 7) for lack of personal jurisdiction. Because Plaintiff has not timely responded, *see* Local R. 7-2(d), and for the reasons given herein, the Court grants the motion.

**I.      FACTS AND PROCEDURAL HISTORY**

Defendant Mesa Pharmacy, Inc. ("Mesa") provides compound prescription drugs to customers with prescriptions from third-party providers and agrees with those customers to accept payment from the customer's payor, e.g., a third-party health insurance company. (*See* Compl. ¶¶ 7–8, May 1, 2014, ECF No. 1). Mesa generates substantial accounts receivable because of the delay in reimbursement from the third-party payors. (*Id.* ¶ 9). When Mesa provides prescription medication to otherwise uninsured patients who hold personal injury claims, Mesa obtains letters of protection, assignments of interest, or liens form the customers in

order to secure the debt. (*See id.* ¶ 10).

Mesa sometimes sells outstanding debt to third parties at a discount. (*Id.* ¶ 12). Rather than selling bundles of debt grouped by patient, Mesa often sells bundles of debt grouped by dates of service, such that a single patient who has incurred multiple debts on various dates might have his debt sold piecemeal to different assignees. (*See id.* ¶¶ 14–16).

The present case arises out of such a sale wherein Plaintiff MedCapGroup, LLC ("MedCap") entered into several purchase agreements with Mesa in November 2012 to purchase multiple bundles of debt grouped by dates of service, with the purchased debt totaling $586,910.58, for which MedCap paid $205,418.71. (*See id.* ¶¶ 17, 24–25). In connection with the sale, Mesa falsely represented to MedCap that each patient's account was valuable and independently collectable and that Mesa would coordinate the collection with non-party MedCareFinance. (*See id.* ¶ 18). Mesa did not coordinate with MedCareFinance. (*Id.* ¶ 19). Mesa also failed to disclose to MedCap that third-party payors are unwilling and not required to negotiate with more than one collecting party per patient account, so when Mesa sells bundles of debt by dates of service, as here, only the first assignee to contact the payor as to a given patient's debt can collect on any debt as to that patient. (*See id.* ¶¶ 19–20). MedCap has therefore been unable to collect on most of the debt it purchased from Mesa. (*Id.* ¶ 21). MedCap accuses Mesa of deliberately failing to explain to MedCap the material difference between purchasing bundles of debt grouped by patient account versus bundles of debt grouped by dates of service so that it could sell essentially worthless bundles of debt while still retaining the right to negotiate settlements for each patient's account. (*See id.* ¶ 22).[1]

MedCap sued Mesa in this Court for breach of contract, breach of the implied covenant of

---

[1] MedCap appears to imply that Mesa retained some portion of each patient's debt and had already contacted the relevant payors, such that Mesa maintained the ability to recover on its own portion of each patients' debt.

1  good faith and fair dealing, fraud, and violations of the Nevada Deceptive Trade Practices Act

2  ("NDTPA"). Mesa has moved to dismiss for lack of personal jurisdiction.

3  **II.    LEGAL STANDARDS**

4        A defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P.

5  12(b)(2). Jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction

6  comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir.

7  1980). When no federal statute governs personal jurisdiction, a federal court applies the law of

8  the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where a forum

9  state's long-arm statute provides its courts jurisdiction to the fullest extent of the Due Process

10 Clause of the Fourteenth Amendment, such as Nevada's does, *see Arbella Mut. Ins. Co. v. Eighth*

11 *Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065), a court

12 need only apply federal due process standards, *see Boschetto*, 539 F.3d at 1015.[2]

13       There are two categories of personal jurisdiction: general jurisdiction and specific

14 jurisdiction. Traditionally, general jurisdiction exists over a defendant who has "substantial" or

---

[2] Nevada's long-arm rule restricts extra-territorial jurisdiction to the limits of both the U.S. and Nevada Constitutions. *See* Nev. Rev. Stat. § 14.065(1). However, Nevada's due process clause is textually identical to the federal clause in relevant respects, *see* Nev. Const. art. 1, § 8(5), and the Nevada Supreme Court reads the state clause as coextensive with the federal clause, *see, e.g., Wyman v. State*, 217 P.3d 572, 578 (Nev. 2009). Until 1868, when the Fourteenth Amendment was adopted, the Due Process Clause of the Fifth Amendment did not apply to the states. *See Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833) (Marshall, C.J.). The Declaration of Rights that comprises Article I of the Nevada Constitution, which was adopted in 1864, was included in order to impose certain restrictions on the State of Nevada that were already imposed against the federal government under the Bill of Rights, and the Nevada Supreme Court has not interpreted the protections of the Declaration of Rights to exceed the scope of their federal counterparts. Michael W. Bowers, *The Sagebrush State* 43–44 (3rd ed., Univ. Nev. Press 2006); Michael W. Bowers, *The Nevada State Constitution* 24 (1993). During the Nevada Constitutional Convention in 1864, the Due Process Clause of Article I was not debated, although several other provisions of Article I, and even Section 8, were heavily debated. *See generally* Andrew J. Marsh, Official Report of the Debates and Proceedings of the Constitutional Convention of the State of Nevada (Frank Eastman pr., 1866), *available at* http://books.google.com.

1  "continuous and systematic" contacts with the forum state such that the assertion of personal

2  jurisdiction over her is constitutionally fair even where the claims are unrelated to those contacts.

3  *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing

4  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).  A state court has

5  general jurisdiction over the state's own residents, for example.

6        The Supreme Court recently clarified that general personal jurisdiction exists only where

7  a company is at "home" in the forum state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760–62

8  (2014).  The Court noted that "continuous and systematic" contacts alone are not enough in-and-

9  of-themselves to create general jurisdiction. *See id.*  The quoted phrase was in fact first used in

10 the context of *specific* jurisdiction as conjunctive with the "arises-out-of" requirement. *See id.* at

11 761 (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326

12 U.S. 310, 317 (1945)).  "Accordingly, the inquiry under *Goodyear* is not whether a foreign

13 corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is

14 whether that corporation's 'affiliations with the State are so "continuous and systematic" as to

15 render [it] essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires*

16 *Operations S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (alteration in original).  So the company

17 must be at "home" in the forum state for there to be general jurisdiction.  Where this is not the

18 case, a plaintiff must rely on specific jurisdiction, i.e., the action must have arisen out of contacts

19 with the forum state.

20       Even where there is no general jurisdiction over a defendant, specific jurisdiction exists

21 when there are sufficient minimal contacts with the forum state such that the assertion of

22 personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"

23 *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316

24 (1945) (quoting *Milliken*, 311 U.S. at 463).  The standard has been restated using different

25 verbiage. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that

there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (citing *Int'l Shoe Co.*, 326 U.S. at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (citing *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 97–98 (1978))).  From these cases and others, the Ninth Circuit has developed a three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

> The plaintiff bears the burden on the first two prongs.  If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable.  But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.

*Id.* (citations omitted).  The "purposeful direction" option of the first prong uses the "*Calder*-effects" test, under which "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc)).  The third prong is a seven-factor balancing test,

under which a court considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 107, 1112 (9th Cir. 2004)).

### III. ANALYSIS

The Court will not address the merits of the claims but only the personal jurisdiction issue. It is clear there is no general personal jurisdiction over Mesa, a California corporation, in Nevada, because Mesa is not alleged to be "at home" in Nevada, but is only alleged to "conduct[] business" in Nevada, however extensively. *See Daimler AG*, 134 S. Ct. at 761. There may be specific personal jurisdiction over Mesa in Nevada if this action arises out of minimal contacts of Mesa with Nevada.

The Court finds that MedCap has not sufficiently alleged that the present action arises out of the purposeful direction of Mesa's activities to the State of Nevada. MedCap does not allege the location of the contract negotiations or signing, from or to where the allegedly fraudulent statements were made, or whether Mesa contacted MedCap in Nevada to initiate negotiations. If it is the case that MedCap contacted Mesa in California, negotiated and entered into the contract there, and heard the allegedly fraudulent statements there, there is no specific jurisdiction over Mesa in Nevada. The Complaint is consistent with such a state of affairs, because none of those relevant circumstances are alleged, and in the present motion, Defendant's Chief Operating Officer attests that the agreements were negotiated and executed in California, and that Mesa does not "actively market" in Nevada. (*See* Kurtz Aff., June 3, 2014, ECF No. 7-1). It is still possible that Mesa contacted MedCap in Nevada to induce it to enter into the contracts, but there

is no evidence of that, and MedCap has not timely responded with any such evidence. Because MedCap has not borne its burden to show minimum contacts by a preponderance of the evidence, Mesa need not show a lack of reasonableness.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 7) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall close the case.

IT IS SO ORDERED.

Dated: This 29th day of July, 2014.

_____
ROBERT C. JONES
United States District Judge